UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RYAN ALTON, | ) | |
|        Plaintiff, | ) | |
| | ) | |
|        v. | ) | No. 2016 CV 006640 |
| | ) | |
| THE CITY OF NAPERVILLE, AND | ) | |
| NAPERVILLE POLICE OFFICER, GRIF | ) | Judge Sharon Johnson Coleman |
| LIPPENCOTT, AND NAPERVILLE | ) | |
| POLICE OFFICERS FULKERSON, | ) | Magistrate Judge M. David Weisman |
| CRACKHOW, MUMENTHAL, | ) | |
| VELASQUEZ AND THORP, | ) | |
| | ) | |
|        Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Defendants hereby submit the following memorandum of law in support of their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6):

**I.    INTRODUCTION**

Plaintiff alleges that on July 10, 2015, Plaintiff was identified as the suspect in a burglary at a CarMax facility in Naperville, that after he was located by the police, he initially fled in a vehicle and, when his vehicle became stuck in a grassy area near a fence, he continued to flee on foot; that Plaintiff fled across Interstate 88 and was pursued on foot by Officer Lippencott; that Plaintiff secreted himself inside of a dumpster which itself was enclosed within a brick and wood structure; that Officer Lippencott found Plaintiff hiding among the garbage inside the dumpster, and that after Officer Lippencott "commanded Plaintiff to get out of the dumpster," Plaintiff "raised his hands and stood up slowly." Thereafter, Officer Lippencott "released the leash from the dog, allowing the dog to climb into the dumpster," and that "Officer Lippencott gave the dog a command," to which the dog responded by biting Plaintiff on the arm. Officer Lippencott then allegedly "grabbed from behind and pulled PLAINTIFF over the side of the dumpster, throwing him onto the ground."

Plaintiff's Complaint appears to allege that the foregoing conduct, as well as other subsequent conduct alleged in the Complaint, constituted excessive force. The instant motion is directed against any claim contained within the Complaint which is based upon, or appears to be based upon, that the initial encounter between Plaintiff and the canine. Plaintiff's Complaint admits that immediately prior to the initial engagement of the dog, Plaintiff had first fled in a vehicle, then crashed his car, then fled on foot, ran across a major interstate highway and then secreted himself within a garbage dumpster in his extreme efforts to evade the police. The admissions contained in the Complaint establish that the initial engagement of the canine did not constitute excessive force or, in the alternative, that the Defendant Officers are entitled to qualified immunity regarding the initial engagement of the canine.

Additionally, Count IV of the Complaint contains an overly broad and incorrect statement of the law regarding indemnification and should be dismissed.

## II. AUTHORITY FOR MOTION

Dismissal is proper where the plaintiff fails to state a claim upon which relief can be granted and where the defect appears on the face of the complaint. Fed. R. Civ. P. 12(b)(6). While a complaint "does not need detailed factual allegations," it is nonetheless a plaintiff's obligation to provide the grounds of the entitlement to relief. *Bell Atlantic Corp. v. Twombly ("Twombly")*, 550 U.S. 544, 555 (2007). A complaint will not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id*. at 557. The "[f]actual allegations must be enough to raise a right to relief above the speculative level and the complaint must contain allegations plausibly suggesting (not merely consistent with) an entitlement to relief." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011), quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

It is well-established that "[a] litigant may plead itself out of court by alleging (and thus

2

admitting) the ingredients of a defense." *Cruz v. City of Chicago*, No. 08-CV-2087, 2013 WL 3864234, at *3 (N.D. Ill. July 24, 2013), citing *Xechem, Inc. v. Bristol–Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004).

Where facts and admissions establish that an initial use of force by police officers was objectively reasonable or that the police officers are entitled to qualified immunity regarding the initial use of force, a court may limit plaintiff's claims to the alleged subsequent use of force. *Schneider v. Love*, No. 09 C 3105, 2011 WL 635582, at *1 (N.D. Ill. Feb. 10, 2011).

### III.   ANALYSIS

**A.   To The Extent Count I Of The Complaint Is Based Upon The Initial Engagement Of The Canine, It Fails To State A Claim Because The Seventh Circuit Has Previously Ruled That The Use Of A Canine Under Virtually Identical Circumstances Is Objectively Reasonable**

It is well-established that "[t]he question whether the use of force during an arrest is proper under the Fourth Amendment depends on the objective reasonableness of the officer's actions, judged on the basis of the conditions the officer faced. In order to assess objective reasonableness, the court must consider all of the circumstances, including notably '[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.' " *Johnson v. Scott*, 576 F.3d 658, 660–61 (7th Cir. 2009), quoting *Graham v. Connor*, 490 U.S. at 396, 109 S.Ct. 1865).

Application of these principles to Plaintiff's own allegations in the instant case leads to the inevitable conclusion that the initial engagement of the canine by Officer Lippencott was objectively reasonable and does not constitute excessive force.

As set forth in Plaintiff's own Complaint, during the time leading up to the initial engagement of the canine, Plaintiff was a potentially dangerous criminal who used all available

3

means to evade capture. Plaintiff admits that he first eluded the police in a vehicle, led the police on a vehicular pursuit, then, when he crashed his car, he continued to evade capture by fleeing on foot, going so far as to run across a major interstate highway on foot. Thereafter, Plaintiff continued his efforts to elude and evade capture by the police by hiding underneath piles of garbage within a garbage dumpster, which itself was enclosed within a brick enclosure.

Plaintiff's Complaint contains a set of facts that is strikingly similar to the facts in *Johnson*. In *Johnson*, the Seventh Circuit held that police use of a German Shepard canine to subdue a cornered suspect did not constitute an unreasonable use of force. As explained by Judge Wood:

> It is well established that a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders. But that principle depends critically on the fact that the suspect is indeed subdued. Here, Scott had no idea how Johnson was going to behave once he was cornered. No law that we know of required Scott to take Johnson's apparent surrender at face value, a split second after Johnson stopped running. Until he encountered a fence that was too high for him to jump over, Johnson had used every method at his disposal to flee from the police. The surrender also did not establish that Johnson was unarmed. A reasonable officer could think that the use of the dog was necessary to help control Johnson; otherwise, Johnson might have had the time he needed to retrieve and use a weapon. Finally, it is worth noting that it could not have been more than one second between Johnson's surrender and the use of force by Scott, given the distance between Archer and Johnson at the time of surrender. In short, Scott's use of force—in the form of Archer—to subdue Johnson was objectively reasonable, given the uncertainties in the situation that faced him.

*Johnson v. Scott*, 576 F.3d 658, 660–61 (7th Cir. 2009) (Internal citations omitted).

The allegations in the instant Complaint are virtually identical to those adduced in discovery in *Johnson*. Not only do Plaintiff's admissions clearly establish that Plaintiff was dangerous and engaged in an extreme course of conduct to evade the police, at the time the canine was initially engaged, Plaintiff was not subdued. Even accepting Plaintiff's self-serving allegation that he raised his hands and "stood up slowly" as true, Officer Lippencott was not required to take Plaintiff's purported surrender at face value, particularly in light of Plaintiff's

4

admissions regarding the extreme measures he undertook to evade capture. Further, just as in *Johnson*, at the time of the initial engagement of the canine, Officer Lippencott still had not determined that Plaintiff was unarmed.

The fact that *Johnson* was decided on summary judgment is of no moment. In the instant case, Plaintiff's admissions regarding his conduct prior to and up until the moment of the initial canine engagement establish precisely the same scenario with which the police officer in *Johnson* was confronted.

Under *Johnson* and its progeny, the initial use of canine force is objectively reasonable under the circumstances at the time of the initial engagement of the canine. Accordingly, because the initial engagement of the canine while Plaintiff was secreted within the garbage dumpster was objectively reasonable, to the extent that Count I purports to contain an excessive force claim arising from the initial engagement of the canine, Count I fails to state a claim and should be dismissed.

    **B.    To The Extent Count II Of The Complaint Is Based Upon The Initial Engagement Of The Canine, It Fails To State A Claim For The Same Reasons Count I Fails to State A Claim**

Count II of the Complaint alleges that "during the constitutional violations described herein, one or more of the Defendants had an opportunity to prevent the excessive force and failed to do so." To the extent Count II is based on the failure to intervene in the initial engagement of the canine, Count II fails to state a claim for the same reasons Count I fails to state a claim based on the initial engagement of the canine.

    **C.    To The Extent Count III Of Complaint Is Based Upon The Initial Engagement Of The Canine, It Fails To State A Claim For The Same Reasons Count I Fails to State A Claim**

Count III of the Complaint alleges that "above-detailed conduct by the Defendant OFFICERS was extreme and outrageous and exceeded all bounds of human decency" and that

"All DEFENDANTS performed the acts detailed above with the intent of inflicting severe emotional distress on PLAINTIFF or with knowledge of the high probability that the conduct would cause such distress."

As set forth above, the initial engagement of the canine under the specific admitted set of circumstances enumerated by Plaintiff in his Complaint is the type of conduct that the Seventh Circuit has previously found to be objectively reasonable and does not constitute excessive force. By virtue of the fact that the initial engagement of the canine was objectively reasonable, it must also follow that the initial engagement of the canine also cannot constitute "extreme and outrageous" conduct "beyond all bounds of human decency" as a matter of law. See e.g. *Smith v. Vill. of Norridge*, No. 06 C 4250, 2009 WL 210458, at *13 (N.D. Ill. Jan. 22, 2009) (IIED claim based on use of force fails where the undisputed facts establish that the use of force was objectively reasonable); *accord Dean v. City of Worcester*, 924 F.2d 364, 369 (1st Cir. 1991) ("Since the officers' conduct in effecting the intended arrest was objectively reasonable in the circumstances, the claims for intentional infliction of emotional distress must fail.")

To the extent Plaintiff's IIED claim in Count III is based on the initial use of force involving the canine, it fails to state a claim and should be dismissed.

D. **The Defendant Officers Are Entitled to Qualified Immunity Regarding The Initial Engagement of the Canine**

In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held as follows:

"The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact. Because qualified immunity is "an immunity from suit rather than a mere defense to

liability ... it is effectively lost if a case is erroneously permitted to go to trial. Indeed, we have made clear that the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery. Accordingly, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson* at 231–32 (2009).

Moreover, the qualified immunity inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition .... the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lunini v. Grayeb*, 395 F.3d 761, 769 (7th Cir. 2005), as amended on denial of reh'g and reh'g en banc (Mar. 4, 2005), quoting *Saucier*, 533 U.S. at 200–01, 121 S.Ct. 2151.

"The doctrine of qualified immunity leaves ample room for mistaken judgments by police officers." *Wagner v. Washington County*, 493 F.3d 833, 834 (7th Cir. 2007).

"To overcome qualified immunity, a plaintiff must show that (1) the facts make out a violation of the plaintiff's federal rights, and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct." *Catlin v. City of Wheaton*, 574 F.3d 361, 365 (7th Cir. 2009).

Applying the foregoing principles to the factual admissions contained within the four corners of Plaintiff's Complaint, the Defendant Officers are entitled to qualified immunity for any claim arising from the initial engagement of the canine. At the time of the incident of July

7

10, 2015, the case of *Johnson v. Scott*, 576 F.3d 658, 660–61 (7th Cir. 2009) and its progeny[1] constituted the prevailing authority in the Seventh Circuit regarding the objective reasonableness of the use of a canine in a circumstance involving a fleeing suspect who has not been determined to be unarmed and who is attempting, by every available method, to evade capture. Accordingly, any claim arising from the initial engagement of the canine under the circumstances alleged within the four corners of Plaintiff's Complaint, is defeated by the doctrine of qualified immunity because not only was the initial engagement not clearly unconstitutional at the time of the incident, the Seventh Circuit specifically approved of the use of a canine in virtually identical circumstances.

Further, *Pearson* instructs that qualified immunity should be determined at the earliest possible stage of the litigation. In this case, the admissions contained within the four corners of Plaintiff's Complaint clearly and unequivocally establish that Plaintiff's conduct leading up to the initial engagement of the canine was virtually identical to the conduct of the *Johnson* plaintiff and the police had not determined that Plaintiff was unarmed. Accordingly, the Defendant Officers are entitled to qualified immunity because the initial engagement of the canine under the circumstances described in the Complaint is virtually identical to the use of force approved as objectively reasonable by the Seventh Circuit and several District Courts in this Circuit at the time of the incident.

### E. Count IV (Indemnification) Contains Incorrect Statements of the Law

Count IV of the Complaint alleges that "Should Defendant OFFICERS be found liable on one or more of the claims set forth above, PLAINTIFF demands that, pursuant to 745 ILCS 10/9-

---

[1] As of July 10, 2015, *Johnson* had been followed or cited favorably by at least 6 decisions in District Courts in this Circuit, including *Hollingsworth v. City of Aurora*, No. 11 CV 4597, 2014 WL 7204083, at *5 (N.D. Ill. 2014), *Schneider v. Love*, No. 09 C 3105, 2011 WL 635582, at *1 (N.D. Ill. Feb. 10, 2011), *Alicea v. Thomas*, No. 2:11-CV-445-TLS, 2015 WL 143987, at *1 (N.D. Ind. Jan. 12, 2015), *Martin v. Luckett*, No. 07 C 2800, 2011 WL 1231024, at *5 (N.D. Ill. Mar. 30, 2011), *Brady v. Scott*, No. 1:09-CV-110, 2010 WL 3946527, at *5 (N.D. Ind. Oct. 5, 2010), *Martin v. Rivera*, No. 1:13-CV-00048-JD, 2014 WL 3740051, at *7 (N.D. Ind. July 29, 2014).

102, the Defendant CITY OF NAPERVILLE be found liable for any judgment PLAINTIFF obtains against said DEFENDANTS, as well as attorneys' fees and costs awarded." (¶ 57).

This is not a correct statement of the law. A defendant who is found liable for violating a plaintiff's constitutional rights may, pursuant to §1988, be liable for a prevailing plaintiff's attorneys' fees; however, only the defendant found to have violated the plaintiff's constitutional rights is subject to the pay an attorneys' fee award pursuant to §1988. In this case, the Defendants accused of violating Plaintiff's constitutional rights are the individual officers. Therefore, because there is no respondeat superior liability under §1983, the only mechanism for Plaintiff to recover an attorneys' fee award from the employer is pursuant to some other statutory requirement. See *Winston v. O'Brien*, 773 F.3d 809, 812 (7th Cir. 2014), citing *Kentucky v. Graham*, 473 U.S. 159 (1985) and *Richardson v. City of Chicago*, 740 F.3d 1099, 1102 (7th Cir. 2014) ("the Supreme Court has held that success in civil-rights litigation against individual government officials does not necessarily entitle a plaintiff to fees from a governmental entity. We have acknowledged, however, that a state indemnification statute might permit recovery of fees independent of § 1988").

In this case, 745 ILCS 10/9-102 only requires that the City pay compensatory damages. As set forth in *Winston v. O'Brien*, 773 F.3d 809, 813 (7th Cir. 2014), the City may pay an award of attorneys' fees, but it is not mandatory. Plaintiff's allegation in Count IV of the Complaint that the City is liable for any award of attorney's fees is contrary to the law.

Similarly, to the extent that Count IV alleges that the City is required to pay any judgment other than compensatory damages, such as punitive damages, it contains an incorrect statement of the law. It is well-established that 745 ILCS 10/9-102 does not require a municipality to pay an award of punitive damages.

**WHEREFORE**, for the foregoing reasons, Defendants respectfully request that this

Honorable Court dismiss the Complaint to the extent the Complaint contains any claim arising from the initial engagement of the canine, as well as Plaintiff's overly broad and legally incorrect indemnification claim in Count IV. The Defendants also respectfully request such other relief as this Honorable Court deems necessary and just.

                                              Respectfully submitted,

                                              /s  Robert Wilder
                                              Attorney for Defendants

Robert Wilder, Senior Assistant City Attorney
The City of Naperville
400 South Eagle Street
Naperville, Illinois 60540
Phone: (630) 420-6013